# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  January 13, 2015 

**NO.  33,154**

**MIGUEL MAEZ,**

      Worker-Appellant,

v.

**RILEY INDUSTRIAL and CHARTIS,**

      Employer/Insurer-Appellees.


**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**David L. Skinner, Workers' Compensation Judge**


Titus & Murphy Law Firm
Victor A. Titus
Farmington, NM

for Appellant

Hoffman Kelley Lopez LLP
Lori A. Martinez
Albuquerque, NM

for Appellees

# OPINION

**WECHSLER, Judge.**

{1}    In *Vialpando v. Ben's Automotive Services*, 2014-NMCA-084, ¶ 1, 331 P.3d 975, *cert. denied*, 331 P.3d 924 (2014), this Court held that the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), authorizes reimbursement for medical marijuana used pursuant to the Lynn and Erin Compassionate Use Act (Compassionate Use Act), NMSA 1978, §§ 26-2B-1 to -7 (2007).  The workers' compensation judge in *Vialpando* had found that the worker was qualified to participate in the Department of Health Medical Cannabis Program authorized by the Compassionate Use Act and that such treatment would be reasonable and necessary medical care.  2014-NMCA-084, ¶ 1.

{2}    In this appeal, the workers' compensation judge (WCJ) found that the worker's authorized treating health care provider (HCP) did not prescribe medical marijuana and concluded that medical marijuana was not reasonable and necessary medical care. Worker Miguel Maez argues that the WCJ erred in this conclusion because Worker had proven that medical marijuana was reasonable and necessary medical care, particularly based on the evidence that the HCP's treatment plan for Worker included medical marijuana, and the HCP and another doctor had certified Worker's use of medical marijuana as required by the Compassionate Use Act.

{3} Because there is not substantial evidence supporting the WCJ's conclusion that medical marijuana was not reasonable and necessary medical care for Worker, we reverse the WCJ's compensation order.

**I.     BACKGROUND**

{4} Worker suffered two compensable injuries to his lumbar spine in the course and scope of his employment with Riley Industrial on February 14, 2011 and March 4, 2011. Riley Industrial was insured by Chartis (both referred to as Employer herein). Worker was entitled to payment of temporary disability until the date of maximum medical improvement and permanent partial disability thereafter based on a seven percent whole body impairment for the balance of the 500-week benefit period. He was also entitled to ongoing reasonable and necessary medical care. His authorized HCP was Dr. Anthony Reeve.

{5} The WCJ found that "Dr. Reeve did not prescribe medical marijuana to Worker" and concluded that "[m]edical marijuana is not reasonable and necessary medical care from an authorized HCP" that would require payment by Employer. Worker appeals from the WCJ's compensation order to the extent that the WCJ did not award medical benefits for Worker's use of medical marijuana for pain management.

## II. REASONABLE AND NECESSARY MEDICAL CARE

### A. Issue on Appeal

{6} On appeal, Worker initially makes arguments concerning the interrelationship of the Workers' Compensation Act and the Compassionate Use Act that are similar to those we decided in *Vialpando*. In *Vialpando*, filed after Worker filed his brief-in-chief in this case, we determined that medical marijuana treatment approved under the Compassionate Use Act that the WCJ found to be reasonable and necessary medical care qualifies for reimbursement under the Workers' Compensation Act. *Vialpando*, 2014-NMCA-084, ¶ 1.

{7} The WCJ in this case did not find Worker's medical marijuana treatment to be reasonable and necessary medical care. To the contrary, the WCJ specifically concluded that "[m]edical marijuana is not reasonable and necessary medical care from an authorized HCP." Worker argues that the WCJ erred in reaching this conclusion because the evidence indicated that medical marijuana is reasonable care for Worker's chronic low back pain and because the WCJ incorrectly found that medical marijuana was not "prescribed" by Dr. Reeve.

{8} The Workers' Compensation Act requires an employer to provide a worker "reasonable and necessary health care services from a health care provider." Section 52-1-49(A). Conversely, an employer need not provide a worker with health care that

is not reasonable and necessary. *See Vargas v. City of Albuquerque*, 1993-NMCA-136, ¶ 8, 116 N.M. 664, 866 P.2d 392 ("[T]he employer's obligation is limited by Section 52-1-49(A) to paying for 'reasonable and necessary' health care services"). Thus, the pivotal question in Worker's appeal is whether the evidence supports the WCJ's conclusion that medical marijuana was not reasonable and necessary medical care.

**B.      Standard of Review**

{9}      We address this question under a whole record standard of review by determining whether substantial evidence in the record as a whole supports the WCJ's conclusion. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. Substantial evidence is credible evidence in light of the whole record "that is sufficient for a reasonable mind to accept as adequate to support the conclusion[.]" *Id.* (internal quotation marks and citation omitted). We give deference to the WCJ as factfinder and view the evidence in the light most favorable to the decision without disregarding contravening evidence. *Id.*

{10}      While we generally may not weigh the evidence, even under whole record review, such review "allows the reviewing court greater latitude to determine whether a finding of fact was reasonable based on the evidence[.]" *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 10, 111 N.M. 550, 807 P.2d 734. Moreover, our review has even

4

greater latitude when reviewing an issue for which the evidence is documentary in nature. As in this case, when "all or substantially all of the evidence on a material issue is documentary or by deposition," an appellate court may "examine and weigh it[.]" *United Nuclear Corp. v. Gen. Atomic Co.*, 1979-NMSC-036, ¶ 62, 93 N.M. 105, 597 P.2d 290 (internal quotation marks and citation omitted). In review for substantial evidence of such a record from a district court proceeding, the appellate court must then give "some weight to the findings of the trial judge on such issue" and not disturb such findings based on conflicting evidence "unless such findings are manifestly wrong or clearly opposed to the evidence." *Id.* (internal quotation marks and citation omitted). In this case, in which we are applying whole record review, we must similarly give weight to the WCJ's findings and consider contravening evidence. *Dewitt*, 2009-NMSC-032, ¶ 12. Following *United Nuclear*, we will not disturb the WCJ's findings unless they are manifestly wrong or clearly opposed to the evidence. 1979-NMSC-036. ¶ 69.

{11} We apply a de novo standard to the WCJ's application of law to the facts. *Vialpando*, 2014-NMCA-084, ¶ 5.

**C.  Review of the Evidence**

{12} Dr. Reeve provided the evidence concerning the issue of whether medical marijuana constituted reasonable and necessary medical care. He testified by

deposition. He made detailed medical reports of each of Worker's visits, and the reports were included as exhibits to his deposition.

{13} Dr. Reeve began treating Worker on June 13, 2011. He testified that his diagnosis of Worker included chronic back pain and that he treated Worker with medication for pain management. Over the course of Worker's treatment, Dr. Reeve had injected Worker with Toradol and had prescribed Soma, Ultram, Sprix, Percocet, Lortab (oxycodone), and hydrocodone for Worker's pain. Dr. Reeve also referred Worker to another doctor for spinal injections. During one test required for pain management patients, Worker tested positive for marijuana. Dr. Reeve informed Worker that if Worker was going to take marijuana, he needed to have a license for Dr. Reeve to continue administering other narcotics, and further, even if Worker had a license, he would probably consider only additional nonnarcotic pain medication.

{14} On February 28, 2012, Dr. Reeve first saw Worker for a medical marijuana evaluation. In his medical report, Dr. Reeve states that Worker has had spinal injections and chronic pain management and that Worker "has failed traditional pain management and is a candidate for the cannabis program." At that time, Dr. Reeve was treating Worker with hydrocodone. His report concludes with the following:

**IMPRESSION**

      1.     Lumbar radiculopathy.
      2.     Chronic low back pain.
      3.     Failed traditional management.

**REHABILITATION MANAGEMENT AND SUGGESTIONS**

I have reviewed the records and examined the patient. The history, radiographic and physical findings are consistent at this time. I will recommend authorization of medical marijuana as a trial. Authorization is good for one year and the patient will need to show symptomatic progress upon reauthorization.

**TREATMENT PLAN**

Authorization for medical marijuana for one year.

{15} Dr. Reeve re-authorized Worker for the medical marijuana program after an evaluation on April 3, 2013. Similarly, Dr. Reeve again stated in his report that Worker had "failed traditional pain management and is a candidate for the cannabis program." He stated the same "IMPRESSION" and "REHABILITATION MANAGEMENT AND SUGGESTIONS" as he had on February 28, 2012. His "TREATMENT PLAN" stated "Reauthorization for medical marijuana for one year."

{16} The Compassionate Use Act requires for enrollment that "a person licensed in New Mexico to prescribe and administer drugs that are subject to the Controlled Substances Act" provide a "written certification" that "the patient has a debilitating medical condition" and that the person certifying "believes that the potential health

7

benefits of the medical use of cannabis would likely outweigh the health risks for the patient." Section 26-2B-3(E), (H). Dr. Reeve signed the certification for Worker to qualify for the Compassionate Use Act medical marijuana program. The original certification is not part of the record on appeal. Dr. Reeve also signed the certification re-enrolling Worker in the program. In that certification, in addition to the statutory requirements stated above, Dr. Reeve further certified that Worker "has current unrelieved symptoms that have failed other medical therapies."

{17} At his deposition, Dr. Reeve was asked: "And because you signed for [medical marijuana], do you believe that it is an appropriate medical treatment for [Worker's] herniated disk?" Dr. Reeve responded:

> Well, I think I need to be really clear on this issue. What happens is patients are going to use the cannabis [marijuana] either one way or the other. He already tested positive for it. And so I explain to patients, "If you're going to use cannabis, you should probably have a license for it because people will suspect you of using it ultimately, and you can always pass a preemployment screen or other tests if you have a license for it." And if patients request that I sign it, I will sign for them, but I'm not recommending or distributing or in any way advocating for the use of medical cannabis.

**1.      Necessity of a Prescription**

{18} Worker contends that the WCJ erred in his conclusion that medical marijuana does not constitute reasonable and necessary medical care because Dr. Reeve did not "prescribe" medical marijuana for Worker. The WCJ found that Dr. Reeve did not

8

prescribe medical marijuana to Worker and further found that "Employer is not liable for the purchase of medical marijuana based on the fact that the medical marijuana is not being prescribed by the authorized HCP, Dr. Reeve." The Workers' Compensation Administration regulations adopted pursuant to NMSA 1978, Section 52-4-5 (1993) and NMSA 1978, Section 52-5-4 (2003) applicable at the time Worker filed his application defined "prescription drug" as a drug requiring "a written order from an authorized HCP for dispensing by a licensed pharmacist or authorized HCP." 11.4.7.7(OO) NMAC (12/31/2011). But, as we stated in *Vialpando*, medical marijuana is not a prescription drug. 2014-NMCA-084, ¶ 11. Moreover, as we further stated in *Vialpando*, the certification required under the Compassionate Use Act by a person licensed in New Mexico to prescribe and administer controlled substances is the functional equivalent of a prescription. *Id.* ¶ 12; see § 26-2B-3(E), (H). We thus agree with Worker that the fact that Dr. Reeve did not provide Worker a prescription as defined in the regulations does not support the WCJ's conclusion that medical marijuana was not reasonable and necessary medical care for Worker.

**2.      Conclusion Regarding Reasonable Medical Care**

{19}     As we have stated, to the extent that the WCJ based his conclusion that medical marijuana was not reasonable and necessary medical care on his finding that Dr. Reeve did not prescribe medical marijuana for Worker, the WCJ's conclusion is

9

based on a faulty premise. Employer argues that the evidence in the record nevertheless supports the WCJ's conclusion. We therefore turn to the other evidence to determine whether it supports the conclusion that medical marijuana was not reasonable and necessary medical care for Worker.

{20} We discuss the two aspects of the WCJ's conclusion separately. With regard to whether medical marijuana was reasonable medical care for Worker, we have little difficulty concluding that the evidence as a whole does not support the WCJ's conclusion. Regardless of whether Worker requested treatment with medical marijuana, Dr. Reeve had treated Worker with traditional pain management that had failed. He adopted a treatment plan based on medical marijuana. He would not have done so if it were an unreasonable medical treatment. The evidence does not support a conclusion that Dr. Reeve did not believe medical marijuana to be a reasonable treatment for Worker.

**3.    Conclusion Regarding Necessary Medical Care**

{21} The aspect concerning necessary medical care is more difficult. Dr. Reeve did not testify that the medical marijuana treatment was necessary for Worker's care. Rather, when asked in his deposition whether he believed it was appropriate medical treatment because he had signed for it, Dr. Reeve stated that Worker was using marijuana, that such patients need a license for such use, and that he will sign for

them if he is requested. He specified that in doing so he was not recommending marijuana use. He also considered the medical marijuana program to be a patient's decision "as it's private and voluntary and it's not overseen by a physician."

{22} The WCJ decided from this evidence that medical marijuana was not necessary medical care for Worker. The question before us is whether there was substantial evidence for the WCJ to reach this conclusion. Under our standard of review, we must defer to the finder of fact and view the evidence in the most favorable light to the decision without disregarding contravening evidence.

{23} Worker had the burden to establish that medical marijuana was a necessary medical treatment. *See DiMatteo v. Doña Ana Cnty.*, 1985-NMCA-099, ¶ 26, 104 N.M. 599, 725 P.2d 575 (stating under previous version of Workers' Compensation Act that the worker had the burden of proving that his medical expenses were reasonably necessary). The evidence indicates that Dr. Reeve considered traditional pain management to have failed and planned to treat Worker with medical marijuana. Dr. Reeve also testified, however, that medical marijuana treatment is a patient's decision and that he will adopt it on a patient's request. The question before us distills to whether, considering all the evidence, the WCJ could reasonably have concluded that medical marijuana was not necessary medical care because Dr. Reeve

11

merely acceded to Worker's choice and adopted medical marijuana as his treatment plan because Worker had begun to use it on his own.

{24} We begin with the contravening evidence. Dr. Reeve's medical reports clearly state that he had treated Worker with traditional pain management and that such treatment had failed. The medical reports further state that Dr. Reeve was adopting medical marijuana as his treatment plan and would recommend its use for Worker. Dr. Reeve did so, certifying in Worker's re-enrollment form that Worker had "unrelieved symptoms that have failed other medical therapies." We consider this evidence to clearly establish that medical marijuana was necessary for Worker's treatment because (1) traditional pain management had failed and (2) it would not be possible for Dr. Reeve to institute or carry out his treatment plan without medical marijuana.

{25} To support the WCJ's conclusion and to consider the evidence in the light most favorable to the WCJ's conclusion, we must be able to infer from Dr. Reeve's deposition testimony, as argued by Employer, that medical marijuana treatment was entirely Worker's choice and that Dr. Reeve certified Worker for the medical marijuana program only because Worker intended to use it regardless and asked Dr. Reeve for the certification. In this regard, Dr. Reeve testified that Worker had tested positive for marijuana, that patients use marijuana "either one way or the other[,]" and

12

that he will sign for patients if requested. He further stated that he was "not recommending or distributing or in any way advocating for the use of medical cannabis."

{26}   But, even reading this evidence in the light most favorable to the WCJ's decision, we do not consider this testimony to be inconsistent with Dr. Reeve's medical records. There is no conflict in the evidence that Dr. Reeve addressed medical marijuana as a treatment for Worker because Worker had used marijuana and tested positive for it. Nor do we question that Dr. Reeve pursued medical marijuana as a treatment plan because Worker requested it. Dr. Reeve's testimony also indicates that, in adopting his treatment plan, he did not recommend medical marijuana to Worker or advocate its use. Dr. Reeve did not distribute medical marijuana to Worker. *See* Section 26-2B-4(E) (stating that a practitioner may not be subject to arrest, prosecution, or penalty for distributing medical marijuana under the Compassionate Use Act).

{27}   We must focus on the question at issue—whether medical marijuana was necessary medical care for Worker. The facts that Dr. Reeve did not initiate or recommend to Worker such care are not dispositive. Regardless of whether he took such action or was merely "passive," as Employer contends, Dr. Reeve adopted a treatment plan that called for medical marijuana. By the very nature of such

13

treatment, medical marijuana was a necessary component. Dr. Reeve then recommended Worker for receipt of medical marijuana by his certification. He did so, even though at Worker's request, because traditional pain management was not successful for Worker.

{28} Perhaps most significantly, we cannot accept the contention, albeit implied, that Dr. Reeve would certify Worker for medical marijuana use solely on Worker's request regardless of whether it was appropriate for Worker's medical care. Marijuana is a controlled substance. The Compassionate Use Act makes an exception to the contraband use of marijuana only when necessary for medical treatment. *See* § 26-2B-2 ("The purpose of the [Compassionate Use Act] is to allow the beneficial use of medical cannabis in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments."). Of course, a patient must wish to participate in the Compassionate Use Act program, but that law does not contemplate that individuals who wish to receive marijuana may do so merely upon request; it requires the certification by a professional. Nor does it contemplate that this professional certification will be issued in an irresponsible fashion. Dr. Reeve was familiar with the Compassionate Use Act program and testified that he was "one of only two doctors that I know of in the state that will sign for the medical cannabis[.]" We cannot infer from Dr. Reeve's testimony that he would certify

14

Worker for the Compassionate Use Act program without exercising his medical judgment. Indeed, to the contrary, his medical records describe in detail the basis for his exercise of his medical judgment.

{29} We additionally note that Dr. Reeve re-examined Worker on April 3, 2013 and re-authorized Worker for the Compassionate Use Act program. Dr. Reeve certified at that time that Worker continued to meet the eligibility requirements for the program and that Worker "has current unrelieved symptoms that have failed other medical therapies." This certification underscores Worker's need for medical marijuana therapy.

{30} We thus read the evidence in the record as a whole as failing to support and as clearly opposed to the WCJ's conclusion that medical marijuana was not reasonable and necessary medical care.

## III. WORKER'S REFUSAL OF REASONABLE AND NECESSARY MEDICAL CARE

{31} Employer also argues that, if medical marijuana is reasonable and necessary medical care, Employer should not be responsible to reimburse it because Worker refused the reasonable and necessary medical care that Dr. Reeve was providing to him. We address this argument because, if Employer is correct, we could affirm the WCJ's compensation order because it is right for a reason that it does not address. *See Davis v. Los Alamos Nat'l Lab.*, 1989-NMCA-023, ¶ 18, 108 N.M. 587, 775 P.2d

15

1304 (stating that we will affirm the decision of a workers' compensation order if it is right for any reason).

{32} However, we do not agree with Employer. Employer's argument is premised on its position that:

> It was Worker's own choice, and not Dr. Reeve's professional judgment of what constituted reasonable and necessary care, that first motivated the medical use of marijuana. Dr. Reeve's rationale for signing for the medical cannabis was not that he wasn't providing reasonable and necessary care, but rather that Worker was going to use marijuana regardless of whether Worker was taking narcotic pain medication.

{33} As we have discussed, however, the substantial evidence in the record as a whole does not support the proposition that Dr. Reeve certified Worker for medical marijuana treatment merely because Worker had made that choice. The record, which includes Dr. Reeve's medical reports, does not support a conclusion that traditional pain medication was the sole reasonable and necessary treatment, precluding any other.

## IV. CONCLUSION

{34} Substantial evidence in the record as a whole does not support the WCJ's conclusion that medical marijuana was not reasonable and necessary medical care. We therefore reverse the WCJ's compensation order.

16

{35}    **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**CYNTHIA A. FRY, Judge**


_____
**MICHAEL E. VIGIL, Judge**