This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37035**

**RUDY SALAZAR,**

Worker-Appellant,

v.

**LOS ALAMOS NATIONAL
LABORATORY,**

Self-Insured Employer-Appellee.

**APPEAL FROM WORKERS' COMPENSATION ADMINISTRATION
Rachel A. Bayless, Workers' Compensation Judge**

Lucia Misa-O'Connor
Albuquerque, NM

Barnhill Law Offices, L.L.C.
Lynn A. Barnhill
Santa Fe, NM

for Appellant

Lynn & Associates, LLC
Phyllis Savage Lynn
Douglas C. Christopherson
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Worker Rudy Salazar (Worker) filed for worker's compensation benefits following an injury sustained while employed with Los Alamos National Laboratory (Employer).

The Workers' Compensation Judge (WCJ) awarded him benefits based on an impairment rating of one percent. Worker appeals the WCJ's order contending the WCJ's impairment rating is inaccurate. We affirm.

**BACKGROUND**

**{2}** On May 14, 2014, Worker injured his left shoulder while carrying metal planks at work. Worker timely filed for workers' compensation benefits. Employer did not dispute that Worker was injured during his employment but rather contested the extent of Worker's impairment.

**{3}** The WCJ held a formal hearing on the merits on December 4, 2017, to determine Worker's accurate impairment rating, pursuant to NMSA 1978, Section 52-1-24(A) (1990). Worker's Exhibits 1 through 4, which the WCJ admitted without objection, included Worker's medical records, deposition testimony from his treating physician, Dr. Miguel Pupiales (Dr. Pupiales), an independent medical examiner (IME) report from Dr. Richard Castillo and Dr. William Ritchie (Dr. Ritchie), and an excerpt from the American Medical Association *Guides to the Evaluation of Permanent Impairment*, Sixth Edition (AMA *Guides*). Worker's medical records showed that Dr. Pupiales calculated Worker's whole body impairment based on the "range of motion rating method" and assigned Worker a whole body impairment of nine percent. Employer's Exhibits A through H were also admitted without objection. These exhibits included various medical and physical therapy records, deposition testimony from Dr. Paul Legant and Dr. Ritchie, Worker's wage records, an IME report, and an excerpt from the AMA *Guides*. Dr. Legant's records stated that he relied on the "diagnosis-based method" to calculate Worker's impairment and assigned a two percent left upper extremity impairment, which converts to a one percent whole person impairment rating.

**{4}** The WCJ found that the "diagnosis-based method" for calculating Worker's impairment used by Dr. Legant was the appropriate method and, therefore, Worker was entitled to benefits at his whole person impairment rating of one percent. The WCJ explained her conclusion as follows:

> Based on the totality of evidence, including medical records, the various discrepancies in range of motion documented by multiple providers, Dr. Pupiales' failure to measure Worker's passive range of motion concurrently with active range of motion as required by the AMA *Guides*, concerns as to the credibility of Dr. Pupiales, Worker's lack of credibility, and the Court's observations of Worker during trial, the diagnos[is]based method was the appropriate way to calculate Worker's impairment for his left shoulder and upper arm strain injury.

**{5}** This appeal followed.

**DISCUSSION**

**{6}** Worker challenges the WCJ's determination that he is entitled to benefits at a whole person impairment rating of one percent. Specifically, Worker contends the WCJ erred when she relied on Dr. Legant's impairment rating rather than Dr. Pupiales's, and in doing so failed to consider relevant evidence. For the reasons that follow, we disagree.

**{7}** "[W]e review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 20, 409 P.3d 956 (internal quotation marks and citation omitted). "Substantial evidence is credible evidence in light of the whole record that is sufficient for a reasonable mind to accept as adequate to support the conclusion." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 9, 347 P.3d 732 (alteration, internal quotation marks, and citation omitted). "We disregard that evidence which has little or no worth and then decide if there is substantial evidence in the whole record to support the agency's finding or decision." *Molinar*, 2018-NMCA-011, ¶ 20 (alterations, internal quotation marks, and citation omitted). "Where all or substantially all of the evidence on a material issue is documentary or by deposition, the reviewing court will examine and weigh it, and will review the record, giving some weight to the findings of the court on such issue, and will not disturb the same upon conflicting evidence unless such findings are manifestly wrong or clearly opposed to the evidence." *Id.* (alterations, internal quotation marks, and citation omitted). "We review the WCJ's application of the law to the facts de novo." *Id.*

**{8}** In this case, the WCJ reviewed expert deposition testimony from both Dr. Legant and Dr. Pupiales. The respective depositions discussed the divergent impairment ratings, differing methods used to evaluate Worker's impairment, and applicable AMA *Guide*s regarding impairment evaluation methods.

**{9}** Dr. Legant opined that the "diagnosis-based method" of evaluation was the appropriate method for evaluating Worker's injury, stating that while the AMA *Guides* provide that either method may be used to evaluate a shoulder injury, the AMA *Guides* also recommend that the "range of motion" method should only be used in specific circumstances and in the absence of a better available method. Dr. Legant testified that he did not believe that Worker's injury was of the specific type described in the AMA *Guides* warranting use of the "range of motion" method. Further, though he noted that he believed Worker's range of motion was normal, Dr. Legant gave Worker the benefit of the doubt that Worker had a decreased range of motion and adjusted the evaluation accordingly. By contrast, Dr. Pupiales opined that in the presence of a range of motion deficit the "diagnosis-based method" cannot be used. He further stated that because several of Worker's providers had identified range of motion deficits the AMA *Guides* indicated that use of the "range of motion" method was appropriate.

**{10}** In support of its decision, the WCJ also reviewed expert deposition testimony from Dr. Ritchie of the IME panel who assessed the evaluations performed by Dr. Legant and Dr. Pupiales. After reviewing Dr. Legant's evaluation, Dr. Ritchie opined that use of the "diagnosis-based method" was reasonable given Dr. Legant's conclusion that

Worker did not have consistent range of motion impairments. On the other hand, Dr. Ritchie identified multiple issues with Dr. Pupiales's evaluation, including possible inaccuracies in scoring and a miscalculation of Worker's range of motion grade modifier. Dr. Ritchie testified that determining which impairment evaluation method to use depends on whether the patient has full range of motion, and that ultimately use of one method of evaluation over another depends on the doctor's belief in the veracity of the patient at the time of the exam.

**{11}** When testimony from Worker's treating physicians conflicts, we have held that "a WCJ may choose between experts' conflicting opinions of a worker's impairment rating." *Yeager*, 1999-NMCA-020, ¶ 13. Indeed, "[w]here evidence is conflicting, the ultimate decision concerning the degree of a worker's impairment and disability rests with the [WCJ]." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 19, 122 N.M. 524, 928 P.2d 250; *Wood v. Citizens Standard Life Ins. Co.*, 1971-NMSC-011, ¶ 16, 82 N.M. 271, 480 P.2d 161 (holding that the trier of fact determines weight and credibility even where the conflicting testimony was given by medical experts). Accordingly, we conclude that substantial evidence supports the WCJ's ruling that the "diagnosis-based method" of evaluation was appropriate and therefore Worker was entitled to benefits at his whole person impairment rating of one percent.

**{12}** Worker makes several arguments against this conclusion. First, Worker contends that the WCJ "emphasized that . . . Worker's range of motion had been noted as 'normal' by Worker's providers," but that she "omitted to conclude the fact that there were more providers that noted the decrease in range of motion to Worker's left shoulder." The record shows that the WCJ discussed each providers' findings at different stages of Worker's treatment. In citing the "various discrepancies" in ranges of motion noted by each provider, the WCJ also considered the totality of the evidence, including medical records, Worker's lack of credibility, and the WCJ's observations of Worker during trial before concluding that the diagnosis-based method was the appropriate way to calculate Worker's impairments. We are not persuaded that the WCJ erred, particularly given the divergent findings noted by Worker's providers, including one in which the provider deemed Worker's claimed disability as marginally reliable.

**{13}** Next, Worker argues that the WCJ did not consider the objective measurement criteria used by Dr. Pupiales as compared to the methods employed by Dr. Legant. This argument is unfounded. The WCJ explicitly discussed the methods used by both doctors and made findings of fact as to each. With regard to Dr. Pupiales's evaluation, the WCJ questioned both his methods and credibility, citing a failure to evaluate Worker's passive range of motion, miscalculation of Worker's range of motion, and conflicting testimony regarding Worker's warm up and lack of referral to physical therapy.

**{14}** Worker also contends that the WCJ erred as a matter of law by interpreting the AMA *Guides* to conclude that Dr. Legant's "diagnosis-based method" of evaluation was the more appropriate method to determine Worker's impairment rating. We understand Worker to contend that our review should include a de novo analysis of the medical

testimony under the AMA *Guides*. However, Worker does not cite any authority demonstrating that our Court engages in such analysis. Accordingly, we decline Worker's invitation to analyze the evidence in light of the AMA *Guides* de novo. *See Curry v. Great Nw.t Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{15}** Lastly, Worker appears to argue that the AMA *Guides* is compulsory such that any deviation may be characterized as error. Worker again fails to present supporting authority or to adequately develop this argument. Our review of applicable case law indicates that our courts have consistently held that "[t]he AMA *Guide*[s] is a general framework, requiring flexibility in its application." *Madrid*, 1996-NMSC-064, ¶ 19; *Yeager*, 1999-NMCA-020, ¶¶ 12-13 ("We recognize that the AMA *Guides* were specifically developed to bring greater objectivity to estimating the degree of a worker's permanent impairment but note that the AMA *Guides* do not establish a rigid formula that must be followed." (citation omitted)). Moreover, with specific regard to impairment ratings, we have held that "a WCJ has some discretion in applying the AMA *Guides* and determining the appropriate impairment rating." *Yeager*, 1999-NMCA-020, ¶ 13.

**{16}** Where we have previously found error on the part of the WCJ, the WCJ's finding for one impairment rating over another involved a nondiscretionary medical decision. *See, e.g.*, *Chavarria v. Basin Moving & Storage*, 1999-NMCA-032, ¶¶ 15-19, 22-27, 127 N.M. 67, 976 P.2d 1019 (concluding that the WCJ's assignment of an impairment rating was error to the extent it conflicted with a nondiscretionary clear directive in the AMA *Guides* or was based on a misapplication of the statute). As Worker does not argue that the issue here involved a nondiscretionary medical decision but rather that one method of evaluation was more appropriate than the other, we conclude there was no error in the WCJ's conclusion that the "diagnosis-based method" of evaluation was appropriate.

**CONCLUSION**

**{17}** For these reasons we affirm.

**{18}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**